IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN KLUCK, )<br>　　　　Plaintiff　　　　　) <br>　v.　　　　　　　　　　　)<br>　　　　　　　　　　　　　　)<br>OIL CITY AREA SCHOOL DISTRICT, )<br>　　　　Defendant.　　　　) | C.A. No. 20-373 Erie<br><br>District Judge Susan Paradise Baxter |

## MEMORANDUM OPINION

### I. INTRODUCTION

#### A. Relevant Procedural History

Plaintiff John Kluck brings this action against Defendant Oil City Area School District, alleging that Defendant violated his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. C.S. § 951, et seq., by subjecting him to a hostile work environment based on gender/sexual orientation (Counts I and III) and/or a retaliatory hostile environment (Counts II and IV).

Defendant has filed a motion for summary judgment seeking judgment in its favor as a matter of law on all claims. [ECF No. 20]. Plaintiff has filed a brief in opposition to Defendant's motion in which he opposes Defendant's request for judgment as to Plaintiff's hostile work environment claims (Counts I and III), but consents to the entry of judgment in favor of Defendant as to Plaintiff's retaliatory hostile environment claims (Counts II and IV).[1] This matter is now ripe for consideration.

---

[1] As a result of this concession, judgment will be granted in Defendant's favor as to Counts II and IV of Plaintiff's

1

## B.    Relevant Factual History[2]

Plaintiff is a self-identified male homosexual. He was hired by Defendant in 1993 as a 4th grade teacher at Hasson Heights Elementary, and was transferred the following year to Smedley Elementary, where he taught third grade classes through 1999. (ECF No. 22, at ¶¶ 4, 6). In 2000, Plaintiff was moved to Seventh Street Elementary, where he taught third grade through the 2019 school year. (Id. at ¶ 7). During the 2019-2020 school year, Defendant learned that the high school business teacher intended to retire at the end of the year, thus creating a vacancy for the 2020-2021 school year. (Id. at ¶¶ 9-10). In early 2020, Defendant's administrative team decided to move Kim Eberle ("Eberle") from her fifth grade teaching position at Defendant's Middle School to the vacant high school business position. (Id. at ¶¶ 12-13). On or about April 27, 2020, Defendant's Superintendent, Dr. Lynda Weller ("Weller") met with her administrative team to discuss teacher assignments for the 2020-2021 school year. (Id. at ¶ 14). The administrative team then decided to reassign Plaintiff from his third grade position at the elementary school to the fifth grade position vacated by Eberle. (Id. at ¶ 15).

On June 1, 2020, Weller and the former elementary school principal met with Plaintiff and informed him of his move from third grade at Seventh Street Elementary to fifth grade at the Middle School, effective at the start of the 2020-2021 school year. (Id. at ¶ 21). In response, Plaintiff raised concerns about working with Chad Gardner ("Gardner"), another fifth grade teacher, because of Gardner's presumed religious beliefs against homosexuals and his choice not to be a member of the teachers' union due to its advocacy of political positions, including gay

---

amended complaint, and all facts related to such claims will not be addressed herein.

[2] The factual history set forth herein has been gleaned from Defendant's Concise Statement of Material Facts [ECF No. 22], to the extent the facts are unopposed by Plaintiff and/or largely supported by the record, as well as Plaintiff's unopposed Statement of Additional Facts [ECF No. 26], to the extent the facts therein are deemed

rights. (Id. at ¶ 22). Plaintiff admitted, however, that Gardner had never done or said anything inappropriate to him and he had never spoken to Gardner about his religious beliefs (Id. at ¶¶ 23, 27). Rather, Plaintiff's understanding that Gardner's religious beliefs are homophobic was based on his assumption that Christian pastors "normally preach that [homosexuality is a sin]." (Id. at ¶ 26).[3] Plaintiff had also heard other teachers talk about Gardner being homophobic because he did not join the union due to its pro-LGBT stance. (ECF No. 26, at ¶ 14).

In August 2020, Plaintiff sent a letter to Defendant stating that he believed that Weller's failure to address the concerns he had with the decision to transfer him to the Middle School was discrimination. (Id. at ¶ 19). Defendant attempted to accommodate Plaintiff's concerns by offering to move his classroom down the hall away from Gardner; however, Plaintiff refused the accommodation because he would still be working on the same team and have team meetings with Gardner present, would still see Gardner in the hall, and would still have to interact with Gardner on a daily basis. (Id. at ¶ 24; ECF No. 26, at ¶ 20).

On multiple occasions Plaintiff was provided with Defendant's Unlawful Harassment and Discrimination Policy and reporting instructions, but never filed any formal complaint about Gardner or his work at the Middle School. (Id. at ¶¶ 38, 45). Plaintiff has never been harassed, nor been subjected to, offensive or inappropriate conduct by Gardner or anyone else at the Middle School, nor has there ever been any physical or verbal confrontation between Plaintiff and Gardner. (Id. at ¶¶ 39-42). Moreover, though he has acknowledged that there were rumors about Gardner "being anti-homosexual," Tim LaVan ("LaVan"), the President of the teachers' union, was never made aware of any issues or complaints regarding Gardner and had no

---

relevant.

[3] Gardner is a pastor elder of Cranberry Branch Fellowship, which does not have any homosexual members of which

3

concerns regarding Plaintiff's move to Defendant's Middle School to teach across from Gardner's classroom. (Id. at ¶¶ 43-44; ECF No. 26, at ¶ 2). Gardner has testified that he has no hatred toward Plaintiff and even offered to meet with Plaintiff to discuss Plaintiff's concerns, but Plaintiff declined to meet. (Id. at ¶¶ 48-49).

To date, Plaintiff remains employed by Defendant as a fifth grade teacher at the Middle School, and remains an effective teacher despite Gardner's presence. (Id. at ¶¶ 60-61). Nonetheless, Plaintiff has testified that having to work in close proximity to Gardner caused his depression symptoms to worsen, which led his physician to double the dose of his antidepressant medication on October 7, 2020. (ECF No. 26, at ¶¶ 17-18).

## II. DISCUSSION

In order to state a claim of discrimination resulting from a hostile work environment, "a plaintiff must show (i) that he suffered intentional discrimination because of his [protected status]; (ii) the discrimination was severe or pervasive; (iii) the discrimination detrimentally affected him; (iv) the discrimination would detrimentally affect a reasonable person of the same [protected status]; and (v) there is a basis for employer liability." Torres v. City of Philadelphia, 907 F.Supp.2d 681, 688 (E.D. Pa. 2012), citing Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007). Succinctly stated, a plaintiff must "show that his workplace 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of [his] employment and create an abusive working environment.'" Culler v. Sec'y of U.S. Veteran Affairs, 507 Fed. Appx. 246, 249 (3d Cir. 2012), quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002).[4]

---

Gardner is aware (ECF No. 26, at ¶¶ 6-7).

[4] The PHRA is substantially identical to Title VII and utilizes the same analytical framework as Title VII; thus, "Pennsylvania courts ... generally interpret the PHRA in accord with its federal counterparts." Kelly v. Drexel

4

In Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001), the Supreme Court established a framework for analyzing the "severe and pervasive" prong:

> [H]arassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

(internal citations and quotation marks omitted).

In evaluating a hostile work environment claim, the Court is mindful that "offhanded comments, and isolated incidents (unless extremely serious)" are not sufficient to sustain a hostile work environment claim. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Rather, the "conduct must be extreme to amount to a change in the terms and conditions of employment...." Id.

Under the foregoing standards, Plaintiff has failed to state a cognizable hostile work environment claim. In particular, Plaintiff has failed to provide any evidence to support his claim that discrimination was severe and pervasive. Indeed, he has acknowledged that he has never been harassed or subjected to offensive conduct by Gardner or anyone else at the Middle School; he has never had any verbal or physical confrontation with Gardner; and Gardner has never said or done anything inappropriate to Plaintiff. Gardner has professed no animosity toward Plaintiff and even offered to meet with Plaintiff to discuss Plaintiff's concerns about working with him, but Plaintiff declined.

It is apparent from the record that Plaintiff's opinion of Gardner's allegedly hostile attitude toward homosexuals is largely based upon the comments of others, rumors, and

---

Univ., 94 F.3d 102, 105 (3d Cir. 1996); Chmill v. City of Pittsburgh, 412 A.2d 860, 871 (Pa. 1980).

5

suppositions, rather than any direct interaction between Plaintiff and Gardner. However, comments about Gardner that were merely overheard by Plaintiff are the sort of "offhanded comments and isolated incidents" that the Supreme Court in Faragher, 524 U.S. at 788, cautioned should not be considered severe or pervasive enough to constitute a hostile work environment. Aside from such comments and innuendo, Plaintiff has provided no evidence whatsoever to show that his workplace "permeated with discriminatory intimidation, ridicule, and insult" such that he was subjected to an "abusive working environment" that detrimentally affected his work performance. Instead, Plaintiff has attempted to create discriminatory animus where there is no evidence to support one, and any "hostility" Plaintiff has allegedly experienced in the workplace has been prompted by his own unfounded speculation and fear.

Based on the record, the Court finds that no reasonable jury could conclude that any discriminatory conduct has occurred that is severe or pervasive enough to create a hostile work environment, and summary judgment will be granted in favor of Defendant accordingly.

An appropriate Order follows.